# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 4, 2006 Session

## STATE OF TENNESSEE v. JONATHAN WESLEY STEPHENSON

**Automatic Appeal from the Court of Criminal Appeals**
**Circuit Court for Cocke County**
**Nos. 5012 and 5040    Ben W. Hooper II, Judge**

---

**No. E2003-01091-SC-DDT-DD - Filed on June 2, 2006**

---

The appeal in this capital case arises from the resentencing of Jonathan Wesley Stephenson, who was convicted in 1990 of first degree murder and conspiracy to commit first degree murder for his role in the contract killing of his wife.  Following the resentencing hearing, the jury imposed a sentence of death, and the Court of Criminal Appeals affirmed.  Upon automatic appeal under Tennessee Code Annotated section 39-13-206(a)(1), we designated the following issues for oral argument:[1] 1) Do dual sentences of incarceration for conspiracy and death for first degree murder in this case violate double jeopardy; 2) Did the trial court err in admitting the prior testimony of two witnesses, Glen Brewer and Michael Litz; 3) Did the trial court err in not considering the defendant's motion to suppress his statement to the police; 4) Did the trial court lack jurisdiction to resentence the defendant; and 5) Is the defendant's death sentence comparatively proportionate and is the sentence valid under the mandatory review of Tennessee Code Annotated section 39-13-206(c)(1).  Having carefully reviewed the record and relevant legal authority, we conclude that none of the errors alleged by the defendant warrants relief.  With respect to issues not herein specifically addressed, we affirm the decision of the Court of Criminal Appeals.  Relevant portions of that opinion are published hereafter as an appendix.  Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

 **Tenn. Code Ann. § 39-13-206(a)(1); Judgment of the Court of Criminal Appeals Affirmed.**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, and CORNELIA A. CLARK, JJ., joined.  ADOLPHO A. BIRCH, JR., concurred in part, dissented in part, and filed a separate opinion.

John E. Herbison, Nashville, Tennessee; Carl R. Ogle, Jefferson City, Tennessee; and Tim S. Moore, Newport, Tennessee, for the Appellant-Defendant, Jonathan Stephenson.

---

[1] "Prior to the setting of oral argument, the Court shall review the record and briefs and consider *all* errors assigned.  The Court may enter an order designating those issues it wishes addressed at oral argument . . . ."  Tenn. R. Sup. Ct. 12.2.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Angele Michele Gregory and Michelle Chapman McIntire, Assistant Attorneys General; Al Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the Appellee-Plaintiff, State of Tennessee.

**OPINION**

**I. BACKGROUND**

In March 1990, Jonathan Wesley Stephenson ("the defendant") was charged with first degree murder and conspiracy to commit first degree murder for his role in the contract killing of his wife, Lisa Stephenson ("Mrs. Stephenson"). Ralph Thompson, Jr. ("Thompson") was charged as a co-defendant in both indictments. Thompson received a life sentence for Mrs. Stephenson's murder, plus a sentence of twenty-five years for conspiracy to commit murder. The defendant was also convicted of both counts of the indictment. The jury sentenced the defendant to death for the first degree murder, and the trial court imposed a consecutive sentence of twenty-five years for the conspiracy. On direct appeal, this Court affirmed both of the defendant's convictions but remanded for resentencing. State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994).[2] On remand, the parties agreed that the defendant would receive a sentence of life without parole for the first degree murder and a sentence of sixty years for the conspiracy. In 1998, the defendant filed a petition for writ of habeas corpus challenging the legality of his sentence of life without parole. In Stephenson v. Carlton, 28 S.W.3d 910, 912 (Tenn. 2000), this Court held that the defendant's sentence of life without parole was illegal because such sentence was not statutorily authorized at the time of the offense. We declared the sentence of life without parole void and remanded the case to the trial court for further proceedings. Following a resentencing hearing, the jury again imposed a sentence of death, and the Court of Criminal Appeals affirmed.

At the resentencing hearing, the State presented proof showing that in December 1989, the defendant was married to Mrs. Stephenson and had a four-year-old son and an eight-month-old son. The defendant worked as a tractor-trailer driver in Morristown, Tennessee. In March 1989, the defendant met Julia Ann Webb ("Webb") at a bar in Knoxville, Tennessee, and the two became romantically involved. The defendant told Webb that his wife had been killed in a traffic accident five years earlier and that afterwards he had an affair with his wife's sister, "Kathy." He also told Webb that he had a child with each woman.

In 1989, on numerous occasions, the defendant asked Glen Franklin Brewer ("Brewer"), a co-worker, to kill the wife of a friend. However, the description of the residence of the proposed

---

[2] This Court remanded for resentencing due to fundamental errors in the sentencing phase of trial, which rendered the verdict facially void. See Stephenson, 878 S.W.2d at 552-57. The jury was instructed that to impose the sentence of death, it must find that evidence of aggravating circumstances outweighs mitigating evidence. Id. at 553. The applicable statute required, however, that the evidence of aggravating circumstances outweigh any mitigating evidence "*beyond a reasonable doubt.*" Id. (quoting Tenn. Code Ann. § 39-13-204(g)(2)(B) (1991) (emphasis added)). To compound matters, the jury was given an outdated verdict form that also omitted the proper standard of proof. Id.

victim matched the defendant's own home. On one occasion the defendant offered Brewer a boat, a motor, and a pickup truck in return for the requested killing. On another occasion the defendant offered Brewer $3,000.00 in return for the killing, and on yet another occasion, the defendant offered Brewer $5,000.00 from life insurance proceeds. The defendant complained to Brewer that his wife was receiving expensive psychiatric treatment and medication and that he feared he would "lose everything he had worked for" if he divorced her. In the fall of 1989, the defendant offered another man, Steven Michael Litz ("Litz"), who was a friend of Thompson, $5,000.00 to kill the defendant's wife because, the defendant said, she was going to divorce him and "take everything he'd ever worked for."

On the evening of December 3, 1989, the defendant and Thompson took Thompson's 30/30 rifle and went to the home of Dave Robertson ("Robertson"), the defendant's employer, at around 7:30 p.m. After instructing Robertson to tell anyone who asked that he and Thompson had been at Robertson's house until 9:45 p.m., the defendant left with Thompson. The two men drove to an isolated area in Cocke County, Tennessee, near the home of Thompson's uncle. Thompson had previously suggested that location as an out-of-the-way place where the defendant could "get rid of" Mrs. Stephenson. Mrs. Stephenson was lured to the remote location to pick up money for the defendant that was supposedly owed to him for "running" drugs. Thompson and the defendant waited there until Mrs. Stephenson arrived. As she sat in her vehicle, Mrs. Stephenson was shot at close range through the car's windshield. The bullet struck Mrs. Stephenson in the forehead and caused massive head injuries. The defendant told law enforcement officers that Thompson shot the victim, and the State's evidence showed that the defendant had offered to give Thompson a truck, a boat, and a motor for killing the victim. Thompson, however, testified that the defendant shot Mrs. Stephenson. Thompson added that, at the defendant's insistence, he also fired the rifle. The two then drove to the defendant's place of work, and the defendant subsequently headed to Ohio in an eighteen-wheeler truck. When Thompson asked about the defendant's children, the defendant told him that they would be all right because his father-in-law would check on them.

On his way out of the state, the defendant met Webb in Harrogate, Tennessee. He informed Webb that "Kathy" had just been killed by some people to whom she owed money. He explained that he and Thompson had gone to the scene of the killing where "Kathy" was found dead. The defendant and Thompson fought there with two men who had killed "Kathy," and they thought that the men were dead. The defendant said that he had not contacted the police because the police were in league with the killers. He told Webb that his children were with "Kathy's" father[3] and commented, "I didn't love her but I'm going to miss the Bitch." Webb recalled that she was with the defendant the weekend prior to Mrs. Stephenson's murder and that at that time the defendant purchased ammunition for a rifle at a K-Mart store.

After meeting with Webb, the defendant drove his truck to Ohio. Upon the discovery of his wife's body, the defendant was called back to Tennessee for questioning. The defendant initially

_____

[3] The two young boys were actually left alone at the defendant's house until Mrs. Stephenson's father found them the next day.

denied involvement in his wife's murder. After Thompson and Robertson implicated him in Mrs. Stephenson's death, the defendant confessed to having Thompson kill her. At the time of Mrs. Stephenson's death, the defendant was the beneficiary of a $5,000.00 life insurance policy covering his wife. The defendant's sons, who were teenagers by the time of the resentencing hearing, were adopted by Mrs. Stephenson's parents and had no contact with their father, who, according to his former father-in-law, had never shown any remorse for the killing. At a separate trial, Thompson was convicted of first degree murder and was sentenced to life in prison.

In mitigation, the defendant presented evidence concerning his family history, psychological condition, and life in prison. Testimony from the defendant's parents and his younger brother painted a picture of a relatively normal childhood, although the defendant's mother testified that the defendant had suffered some emotional problems and was once hospitalized after attempting suicide. The defendant, the second of three sons, was described as "a regular kid" and as "a typical teenager" with a good sense of humor, who was quick-witted and more interested in sports than school. Because of his father's career as an officer in the United States Air Force, the family moved often. The defendant's mother worked outside the home. The defendant's brother testified about how the defendant had "raised" him while their mother and father worked. After twenty years of marriage, the defendant's parents divorced. Upset over the divorce, the defendant left his home in Anchorage, Alaska, as soon as he graduated from high school and went to live with his grandparents in Morristown and Newport, Tennessee. Prior to his convictions in this case, the defendant had no criminal record.

Dr. Eric S. Engum, a clinical psychologist specializing in clinical neuropsychology and forensic psychology, testified that he performed a two-day comprehensive evaluation of the defendant. Dr. Engum described the defendant as alert, responsive, articulate, and much more intelligent than the average convict. Despite a past history of Attention Deficit Disorder and a potential learning disability, the defendant had a comprehensive I.Q. of 118, a verbal I.Q. of 121, and a performance I.Q. of 111. According to Dr. Engum, the defendant falls into the "bright normal if not superior range of intellectual functioning," and an achievement test showed that he performs at above the high school graduate level in basic academic skills. Dr. Engum found no evidence of brain damage. The defendant's attention and concentration were good, and he performed above average on neuropsychological tests administered during the evaluation. Dr. Engum testified that the defendant suffers from a significant level of depression but that he "masks" his condition. According to Dr. Engum, the defendant, who has a passive-aggressive personality, is resigned, withdrawn, and feels helpless. Nevertheless, the defendant's psychological difficulties do not interfere with his ability to perform his assigned tasks in prison, where he functions well. Dr. Engum diagnosed the defendant as suffering from a depressive disorder not otherwise specified and from a personality disorder not otherwise specified with schizoid, depressive, and avoidant features. Dr. Engum opined that prisoners with the defendant's psychological traits do not have major problems while incarcerated and generally are not recidivists.

Dr. Engum and other witnesses, including members of the defendant's family, correctional employees, and church workers, testified about the defendant's life at the Northeastern Correctional

Center in Mountain City.  The defendant served as a clerk in the law library, completed a program in paralegal studies and training in construction work, was an inmate advisor for the disciplinary board, spoke with troubled juveniles, participated in religious programs, was ordained as a minister, and played bass guitar in a multi-racial gospel band.  He was described as a good inmate, an asset to the prison, "the cream of the crop," and "a good individual."  Questioning by the State revealed that the defendant had several disciplinary reports prior to coming to the Northeastern Correctional Center but that he had only one minor disciplinary problem since then.  His family members and church workers testified about the high esteem in which the defendant was held by the other prisoners and their families.  The defendant's family testified that he had changed after coming to Northeastern Correctional Center.  His mother described him as "very bitter and very angry" when he went to prison but said that he was now a different person:  kind, thoughtful, hopeful, and caring. The defendant's father testified that Mrs. Stephenson's father will not allow the defendant's parents to see their two grandsons and that, although the defendant has asked his father to contact his sons for him, the defendant's former father-in-law obstructs any communication with the boys.  In response to the State's questions, witnesses admitted that the defendant had never expressed remorse for killing his wife.

Based on this proof, the jury found that the State had proven beyond a reasonable doubt one aggravating circumstance, that the defendant committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration.  Tenn. Code Ann. § 39-13-204(i)(4) (1989).  In addition, the jury found that the State had proven that this aggravating circumstance outweighed any mitigating circumstances beyond a reasonable doubt.  As a result, the jury sentenced the defendant to death for the first degree murder. The trial court ordered that the death sentence and the sixty-year sentence for conspiracy to commit the first degree murder run consecutively.[4]

## II.  ANALYSIS

### A.  DOUBLE JEOPARDY

The defendant contends that dual sentences of incarceration for conspiracy to commit first degree murder and death for first degree murder based on the aggravating circumstance that the killing was committed for remuneration constitute multiple punishments for the same conduct, thereby violating the provisions against double jeopardy in the Fifth and Fourteenth Amendments to the United States Constitution[5] and article I, section 10 of the Tennessee Constitution.[6]  He

---

[4] The judgment form states that the death sentence runs consecutively to the conspiracy sentence.  Literally interpreted, this would mean that the defendant could be executed only after the conspiracy sentence is served.  At the motion for new trial, the court and counsel for the State agreed that the conspiracy sentence runs consecutively to the death sentence.

[5] The double jeopardy clause of the Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be
(continued...)

acknowledges that on direct appeal of his first trial this Court rejected his claim that convictions for both conspiracy to commit first degree murder and first degree murder violated double jeopardy under the United States Constitution. We held that conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. State v. Stephenson, 878 S.W.2d at 538. In the habeas corpus case in which this Court invalidated the defendant's agreed sentence of life without parole, the Court stated that its ruling did not affect the defendant's separate conviction and sentence for conspiracy to commit first degree murder. See Stephenson v. Carlton, 28 S.W.3d at 912 n.3. Generally, the "law of the case" forecloses argument on an issue that was previously decided in an appeal of the same case. See State v. Jefferson, 31 S.W.3d 558, 560-61 (Tenn. 2000). However, an issue may be reconsidered despite being decided in a prior appeal if

> (1) the evidence offered at the hearing on remand was substantially different from the evidence at the first proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law occurring between the first and second appeal.

State v. Carter, 114 S.W.3d 895, 902 (Tenn. 2003). The defendant argues that changes in the law since his first appeal require that this Court revisit his double jeopardy claim.

### 1. United States Constitution

The defendant's theory is that the decisions of the United States Supreme Court in Ring v. Arizona, 536 U.S. 584 (2002), and Sattazahn v. Pennsylvania, 537 U.S. 101 (2003), amount to a change in the controlling law, which allows the issue of double jeopardy to be reconsidered. See Carter, 114 S.W.3d at 902. The defendant asserts that under Ring, the aggravating circumstances found in Tennessee Code Annotated section 39-13-204(i) must be considered elements of the offense of capital murder. He says that Sattazahn extended the Ring analysis to double jeopardy so that in his case punishments for both conspiracy and capital murder violate double jeopardy. We disagree that our prior holding has been affected by either Ring or Sattazahn and reaffirm that it is constitutionally permissible for the defendant to be convicted of and sentenced for both first degree murder and conspiracy to commit first degree murder.

---

[5](...continued)
twice put in jeopardy of life or limb."

[6] The double jeopardy clause of the Tennessee Constitution provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. 1, § 10.

In Ring, the United States Supreme Court held that Arizona's capital sentencing procedure violated the Sixth Amendment[7] right of a defendant to have a jury determine any fact upon which the legislature conditions an increase in his or her maximum punishment. 536 U.S. at 609. Under Arizona's capital sentencing procedure, the trial judge was allowed to determine the presence or absence of enumerated aggravating and mitigating circumstances. The United States Supreme Court explained that because Arizona's enumerated aggravating factors operated as "'the functional equivalent of an element of a greater offense,'" these factors must be found by a jury rather than by the trial judge. Id. (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000)). Ring did not hold, however, that the enumerated aggravating factors were actual elements of an offense for purposes of a double jeopardy analysis under the Fifth Amendment, nor did it imply that the test established by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932), would have to be revised to incorporate aggravating factors as actual elements of a crime. The "Blockburger test" for determining when multiple convictions violate double jeopardy requires that courts examine the offenses to ascertain "whether each [statutory] provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304.

In Sattazahn, the United States Supreme Court held that when a defendant who is convicted of murder and sentenced to life imprisonment because the jury is unable to agree on a sentence succeeds in having his or her conviction reversed on appeal, double jeopardy does not prevent the state from seeking the death penalty on retrial. 537 U.S. at 112-13. Thus, Sattazahn involved only the prior acquittal prong of double jeopardy. In part III of the opinion, Justice Scalia, writing for a three-judge plurality, explained that Ring held that aggravating circumstances making a defendant eligible for the death penalty operate as "'the functional equivalent of an element of a *greater offense*'" and that for the purposes of the Sixth Amendment's jury-trial guarantee, the offense of "murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances." 537 U.S. at 111 (quoting Ring, 536 U.S. at 609). Justice Scalia concluded by stating, "We can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence' for purposes of the Fifth Amendment's Double Jeopardy Clause." Id.

Contrary to the defendant's contention, Sattazahn does not alter the holding of Ring. The defendant contends that because the four dissenting justices would have held that death was not an available sentence on retrial, they agree with Justice Scalia's application of the analysis in Ring to double jeopardy. However, a majority of the justices of the United States Supreme Court did not join in the language in Sattazahn relied upon by the defendant. Moreover, the dissent did not rely upon Ring. Under these circumstances, the more reasonable conclusion is that only two other justices, Rehnquist and Thomas, agreed with Justice Scalia's reasoning. We conclude that the majority opinion in Sattazahn cannot be read to hold directly or by implication that aggravating circumstances must be included as actual elements of the offense of capital murder for purposes of the statutory elements test under Blockburger. See also People v. Hogan, 114 P.3d 42, 57-58 (Colo.

---

[7] The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury."

Ct. App. 2004) (non-capital case adopting a similar interpretation of <u>Ring</u> and <u>Sattazahn</u> in response to a double jeopardy challenge).

The <u>Blockburger</u> test is satisfied in this case because first degree murder requires proof of a killing but does not require proof of an agreement to commit a killing. <u>Compare</u> Tenn. Code Ann. § 39-13-202(a)(1) (premeditated first degree murder) <u>with</u> <u>id.</u> § 39-12-103(a) (1989) (criminal conspiracy). Therefore, the defendant's convictions for both first degree murder and conspiracy to commit first degree murder are constitutionally permissible. <u>Ring</u> and <u>Sattazahn</u> do not compel the conclusion that the federal constitution's prohibition against double jeopardy is violated in this case.

In addition, even if aggravating circumstance (i)(4) is considered an element of the offense of "capital premeditated first degree murder," double jeopardy is not violated under <u>Blockburger</u>. "Capital murder" based on the (i)(4) aggravating circumstance requires proof of payment or promise of payment as a motive for the murder. Conspiracy does not require proof of payment or a promise of payment, or commission of the underlying crime, but only an agreement to engage in criminal conduct. Furthermore, under federal law, even when two charges are identical under the <u>Blockburger</u> test, cumulative punishment is not prohibited if such was the intention of the legislature. <u>Missouri v. Hunter</u>, 459 U.S. 359, 368-69 (1983). Although there is no provision in the Tennessee Code expressly providing for separate punishment for the conspiracy and the completed offense, Tennessee Code Annotated section 39-12-106(c) (1989), which provides that a person may be convicted of conspiracy and the offense that was the object of the conspiracy, implies that multiple punishment is contemplated. <u>See also</u> Tenn. Code Ann. § 39-12-106 (1989), Sentencing Commission Comments ("[T]he conspiracy is not merged with the completed offense.").

### 2. Tennessee Constitution

Arguing that the applicable test for double jeopardy under the state constitution has changed since the time of his conviction and sentence for conspiracy as a result of <u>State v. Denton</u>, 938 S.W.2d 373 (Tenn. 1996), the defendant also raises a double jeopardy challenge under article I, section 10 of the Tennessee Constitution. Even under <u>Denton</u>, the defendant's convictions do not violate his right against double jeopardy. Under <u>Denton</u>, resolution of a double jeopardy question under the Tennessee Constitution depends upon 1) a <u>Blockburger</u> analysis of the statutory offense; 2) an analysis, guided by the principles of <u>Duchac v. State</u>, 505 S.W.2d 237 (Tenn. 1973), of the evidence used to prove the offenses; 3) a consideration of whether there were multiple victims or discrete acts; and 4) a comparison of the purposes of the respective statutes. 938 S.W.2d at 381. First, in the defendant's direct appeal we determined that the offenses are not the same under the <u>Blockburger</u> test. <u>State v. Stephenson</u>, 878 S.W.2d at 538. Second, we conclude that the same evidence is not required to prove both offenses. The defendant's conviction for first degree murder required proof of his criminal responsibility for the victim's death and proof of the victim's death. Tenn. Code Ann. § 39-13-202(a)(1) (1989) (premeditated first degree murder). However, his conviction for conspiracy to commit first degree murder required proof of an agreement to commit the murder, not necessarily proof of a killing. Tenn. Code Ann. § 39-12-103(a) (1989) (criminal conspiracy). Third, although there was only one victim, the defendant committed separate and

-8-

distinct acts.  The defendant's act of murder, which he committed by employing another to commit the murder for remuneration or the promise of remuneration, is separate and distinct from the defendant's entering into an agreement with Thompson to have Mrs. Stephenson killed.  In addition, the defendant's agreement with Thompson to have Mrs. Stephenson killed is separate and distinct from the act satisfying the (i)(4) aggravating circumstance, the defendant's act of offering Thompson a boat, motor, and pickup truck in exchange for the completed killing.  Finally, the legislative purpose of the statutes is different.  The first degree murder statute is intended to deter premeditated, intentional killings, while the conspiracy statute is intended to deter agreements to commit any criminal offense.  Accordingly, the double jeopardy clause of the Tennessee Constitution was not violated by sentencing the defendant for both conspiracy and first degree murder or by applying the (i)(4) aggravating circumstance to impose the death penalty for Mrs. Stephenson's murder.

## B.  ADMISSION OF PRIOR TESTIMONY

Over the defendant's objection, the trial court allowed the State to read into the record the former testimony of both Brewer and Litz, each of whom testified at the defendant's first trial in 1990 that the defendant had offered to pay him for killing his wife, or a "friend's wife" in the case of Brewer.  At the time of the resentencing hearing, Brewer was in poor health and living in Oklahoma, although he was not so ill that he could not have appeared.  Litz could not be located by the State despite several attempts to find him.[8]  At the resentencing hearing, the defendant complained that the State had not established that either witness was "unavailable" as required for admission of this evidence under Rule 804 of the Tennessee Rules of Evidence.[9]  In addition, the

---

[8] In the Motion for New Trial, defense counsel indicated that their investigator had located Litz and that Litz was in prison.

[9] Rule 804 of the Tennessee Rules of Evidence provides, in pertinent part, as follows:

> (a) Definition of Unavailability.  "Unavailability of a witness" includes situations in which the declarant:
>
> (1) is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement; or
>
> (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
> (3) demonstrates a lack of memory of the subject matter of the declarant's statement; or
>
> (4) is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity; or
>
> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process; or

(continued...)

defendant contended in the Motion for New Trial that admission of this prior testimony violated his rights of confrontation found in both the state and federal constitutions.[10] In the Court of Criminal Appeals, the defendant also relied on Crawford v. Washington, 541 U.S. 36 (2004), to support his confrontation claim. The Court of Criminal Appeals held that the Confrontation Clause was not applicable to sentencing hearings and that Crawford did not expand its application to a capital sentencing hearing. The Court of Criminal Appeals did not address the defendant's separate claim under article I, section 9 of the Tennessee Constitution.

### 1. Rules of Evidence

The defendant's argument that the witnesses' prior testimony should have been precluded under the Tennessee Rules of Evidence is misplaced. This Court has repeatedly held that the rules of evidence do not limit the admissibility of evidence, including hearsay, at a capital sentencing hearing. See Carter, 114 S.W.3d at 903; State v. Austin, 87 S.W.3d 447, 459 (Tenn. 2002); State v. Sims, 45 S.W.3d 1, 14 (Tenn. 2001). Moreover, Tennessee Code Annotated section 39-13-204(c) provides: "Any . . . evidence which the court deems to have probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence; provided, that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted." Thus, the prerequisites for admission of the two witnesses' testimony under Rule 804(b)(1) of the Tennessee Rules of Evidence do not apply to this resentencing hearing.

---

[9](...continued)

> (6) for depositions in civil actions only, is at a greater distance than 100 miles from the place of trial or hearing.

> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

[10] Article I, section 9 of the Tennessee Constitution provides "[t]hat in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face." The Sixth Amendment of the United States Constitution guarantees an accused in a criminal proceeding the right to confront the witnesses against him, and this right is binding on the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965).

## 2. *United States Constitution and Tennessee Constitution*

We also conclude that the defendant's Sixth Amendment right of confrontation was not violated by the admission of the former testimony of Brewer and Litz. In Crawford v. Washington, the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial" statements by an unavailable witness unless the defendant has had a prior opportunity to cross-examine the witness. 541 U.S. at 68. With respect to testimonial statements, the Court held that "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. Thus, Crawford placed restrictions similar to Rule 804(b)(1) on the admission of testimonial statements. The defendant concedes that Crawford's cross-examination prong is met; however, he continues to argue that the witnesses were not unavailable. Crawford does not address the use of hearsay at sentencing.

The United States Supreme Court has never expressly held that the Sixth Amendment right to confrontation does not apply at sentencing; however, the various circuit courts of appeal have repeatedly so held.[11] The United States Supreme Court decision usually cited for this principle is Williams v. New York, 337 U.S. 241 (1949), a capital case decided on due process grounds and involving fully discretionary sentencing by a judge. The continuing validity of Williams has been questioned. See, e.g., Susan N. Herman, The Tail that Wagged the Dog: Bifurcated Fact-Finding under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S. Cal. L. Rev. 289, 317-21 (1992); Alan C. Michaels, Trial Rights at Sentencing, 81 N.C. L. Rev. 1771, 1837-39 (2003). However, the federal appellate courts continue to hold that the Sixth Amendment right of confrontation does not apply at sentencing, even after Crawford. See United States v. Stone, 432 F.3d 651, 654 (6th Cir. 2005) (stating that Crawford does not change prior rule that confrontation clause does not apply to sentencing); United States v. Chau, 426 F.3d 1318, 1322-23 (11th Cir. 2005) (refusing to consider Crawford's application at sentencing as plain error and noting that other circuit courts have unanimously held that Crawford does not alter the previous rule that the Confrontation Clause does not apply at sentencing hearings); United States v. Monteiro, 417 F.3d 208, 215 (1st Cir. 2005); United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005); United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005); United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005).

Even if the Confrontation Clause were deemed to apply to capital sentencing proceedings, the defendant's rights under that clause were not violated. The United States Supreme Court, in Crawford, stated that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes:

---

[11] See, e.g., Szabo v. Walls, 313 F.3d 392, 398 (7th Cir. 2002); United States v. Garcia-Sanchez, 189 F.3d 1143, 1149 (9th Cir. 1999); United States v. Bingham, 81 F.3d 617, 630 (6th Cir. 1996); United States v. Petty, 982 F.2d 1365, 1367 (9th Cir. 1993); United States v. Silverman, 976 F.2d 1502, 1510 (6th Cir. 1992) (en banc); United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992) (en banc); United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992); United States v. Johnson, 935 F.2d 47, 50 (4th Cir. 1991); United States v. Kikumura, 918 F.2d 1084, 1102 (3d Cir. 1990); United States v. Marshall, 910 F.2d 1241, 1244 (5th Cir. 1990); United States v. Beaulieu, 893 F.2d 1177, 1180-81 (10th Cir. 1990).

confrontation." 541 U.S. at 68-69. Here, although the witnesses were not present at sentencing, the defendant had the opportunity to confront both witnesses at trial, and the entire cross-examination of each witness was read to the jury during the resentencing hearing. Moreover, the defendant's own statement to police was sufficient to support the jury's finding of the (i)(4) aggravating circumstance.

The Tennessee Constitution requires "face-to-face" confrontation; thus, it affords a defendant greater constitutional protection than does the United States Constitution. See State v. Deuter, 839 S.W.2d 391, 395 (Tenn. 1992). Nonetheless, we also conclude that the right to confrontation under the Tennessee Constitution did not bar the admission of the former testimony of Brewer and Litz during the penalty phrase. This conclusion is consistent with our previous observation that the admission of hearsay evidence during sentencing under Tennessee Code Annotated section 39-13-204(c) and its predecessors does not violate the right to confrontation. See State v. Smith, 857 S.W.2d 1, 23 (Tenn. 1993). Furthermore, we note that the defendant had the opportunity to confront Brewer and Litz face-to-face during the guilt phase of this capital case.

## C. MOTION TO SUPPRESS

Before his first trial, the defendant filed a motion to suppress his statement to law enforcement officers. On appeal, he argued that his confession should have been suppressed because 1) his intoxication and emotional condition prevented a knowing, intelligent, and voluntary waiver of his right to remain silent; 2) the officers coerced his statement; 3) the officers did not inform him that an attorney hired by his father was present at the sheriff's office; and 4) he invoked his right to counsel. We held that the trial court did not err in refusing to suppress the statement. See State v. Stephenson, 878 S.W.2d at 542. Prior to the resentencing hearing, the defendant filed another motion to suppress his statement on the ground that he had been detained at the sheriff's department without probable cause in violation of the Fourth Amendment to the United States Constitution[12] and

---

[12] The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961).

article I, section 7 of the Tennessee Constitution.[13] We hold that the defendant waived this claim by not raising it as a ground in the first motion to suppress.

The defendant argues that he is not precluded from challenging his statement on this ground because Tennessee Code Annotated section 39-13-204(c) (2003), which addresses the types of evidence admissible at a capital sentencing hearing, provides that subsection (c) "shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or the constitution of Tennessee." He contends that if evidence obtained in violation of a defendant's Fourth Amendment rights is accepted by the sentencer and used to enhance the defendant's sentence, the government will profit from its lawless behavior, and the sentencer becomes a partner in official lawlessness. In addition, the defendant points to language in previous cases indicating that this Court will consider significant errors regardless of whether they are called to the trial court's attention because this Court is required by statute to review a sentence of death. See State v. Martin, 702 S.W.2d 560, 564 (Tenn. 1985) (overruled on other grounds by State v. Brown, 836 S.W.2d 530 (Tenn. 1992)). However, the defendant has waived this challenge. The fact that the defendant's sentence was overturned on appeal does not provide him with a second opportunity to litigate pre-trial issues that could have been raised before his original trial.

Rule 12(b)(3) of the Tennessee Rules of Criminal Procedure requires that all motions to suppress evidence be presented prior to trial. Failure to make the motion before trial results in waiver, although a court may grant relief from the waiver for cause shown. Tenn. R. Crim. P. 12(f). Waiver is supported by the traditional reading of both Rule 12 and the word "trial" as referring to the proceeding at which guilt is determined, with sentencing being only a part of that unified criminal process. In addition, the language in Tennessee Code Annotated section 39-13-204(c) prohibiting the use of unconstitutionally secured evidence does not indicate that the General Assembly contemplated that the doctrine of waiver should not apply at capital sentencing. Furthermore, the remand for resentencing should not be construed as re-opening this issue. Cf. State v. O'Hara, 439 N.E.2d 431, 432 (Ohio Ct. App. 1980) (granting of new trial did not permit defendant to raise a motion to suppress where no such motion to suppress was made prior to first trial, where new trial was granted for purposes wholly aside from the grounds for the motion, and where a rule of criminal procedure required a motion to suppress to be made seven days before trial).

---

[13] Article I, section 7 of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

This constitutional provision is identical in intent and purpose with the Fourth Amendment. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## D.  JURISDICTION OF THE TRIAL COURT

Upon declaring the defendant's sentence of life without parole void in <u>Stephenson v. Carlton</u>, this Court remanded the case to "the trial court" for further proceedings.  28 S.W.3d at 912.  Mandate thereupon issued to the Criminal Court for Johnson County, the habeas corpus court, which entered a final judgment on December 5, 2000, declaring the defendant's sentence of life without parole null and void and ordering that a copy of the judgment be forwarded to several persons, including the Circuit Court Clerk of Cocke County and the District Attorney General of Cocke County where the defendant was originally tried.  The defendant filed an objection to the jurisdiction of the Cocke County Circuit Court; however, the trial court concluded that the Cocke County Circuit Court retained jurisdiction based on the original remand and mandate for resentencing entered following the direct appeal in 1994.

The defendant asserts that the trial court had no jurisdiction to resentence him because there was neither mandate or remand by the appellate court nor transfer of the case from the Johnson County Criminal Court to the Cocke County Circuit Court.  Relying on <u>McLaney v. Bell</u>, 59 S.W.3d 90, 95 (Tenn. 2001), the defendant argues that this Court should have remanded the case to the original trial court after voiding the judgment.  In <u>McLaney</u>, we held that the sentence would be void under certain circumstances and remanded the case to the habeas corpus court to determine whether these circumstances existed and, if so, to transfer the case to the trial court "for appropriate disposition."  <u>Id.</u> at 95-96.  In the present case, while the Johnson County Criminal Court did not state that it was "transferring" the case to Cocke County, it sent the Cocke County Circuit Court a copy of the order declaring the defendant's sentence null and void.  Upon receipt of such an order, the Cocke County Circuit Court, as the original conviction court, was obligated to exercise its subject matter jurisdiction to impose a sentence on the defendant's first degree murder conviction, which remained valid and in effect.  Moreover, as the court with exclusive subject matter jurisdiction of the defendant's conviction for first degree murder, the Cocke County Circuit Court also possessed the inherent authority to impose a sentence for that conviction.  The actions of the Johnson County Criminal Court in declaring the defendant's sentence null and void created sufficient reasonable necessity to prompt the Cocke County Circuit Court to exercise its inherent authority.  Therefore, the defendant's argument regarding jurisdiction is without merit.

## E.  MANDATORY REVIEW FACTORS

Tennessee Code Annotated section 39-13-206(c)(1) (2003) requires that courts reviewing a sentence of death for first degree murder determine whether:

> (A) The sentence of death was imposed in an arbitrary fashion;
>
> (B) The evidence supports the jury's finding of statutory aggravating circumstance or circumstances;

(c) The evidence supports the jury's finding that the aggravating circumstance or circumstances outweigh any mitigating circumstances; and

(D) The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant.

Our review of the record confirms that the death sentence in this case was not imposed in an arbitrary fashion. We also conclude that the evidence that the defendant offered to give Thompson a boat, a motor, and a truck is sufficient to support the jury's finding of aggravating circumstance (i)(4), that the defendant committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration. See Tenn. Code Ann. § 39-13-204(i)(4).

We further conclude that the evidence was sufficient to support the jury's finding that the aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt. In determining whether the evidence supports the jury's finding, the proper standard is whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the aggravating circumstance(s) outweighed the mitigating circumstance(s) beyond a reasonable doubt. See State v. Henderson, 24 S.W.3d 307, 313 (Tenn. 2000); State v. Bland, 958 S.W.2d 651, 661 (Tenn. 1997). A rational juror could have found that the (i)(4) aggravating circumstance outweighed the various mitigating circumstances presented by the defendant, including his family history, psychological condition, and his life in prison, beyond a reasonable doubt.

In conducting a comparative proportionality review as required by Tennessee Code Annotated section 39-13-206(c)(1)(D), we have previously stated that

> we begin with the presumption that the sentence of death is proportional with the crime of first degree murder. A sentence of death may be found disproportionate if the case being reviewed is "plainly lacking in circumstances consistent with those in similar cases in which the death penalty has previously been imposed." A sentence of death is not disproportionate merely because the circumstances of the offense are similar to those of another offense for which a defendant has received a life sentence. Our inquiry, therefore, does not require a finding that a sentence "less than death was never imposed in a case with similar characteristics." Our duty "is to assure that no aberrant death sentence is affirmed."

State v. Powers, 101 S.W.3d 383, 403 (Tenn. 2003) (quoting State v. Hall, 976 S.W.2d 121, 135 (Tenn. 1998)) (citations omitted). In considering proportionality, we look at the facts and circumstances of the crimes, the characteristics of the defendant, and the aggravating and mitigating

-15-

circumstances involved, and compare the present case with others in which a defendant was convicted of the same or similar crimes.  See State v. Godsey, 60 S.W.3d 759, 782 (Tenn. 2001). The pool from which we select similar cases includes "only those first degree murder cases in which the State seeks the death penalty, a capital sentencing hearing is held, and the sentencing jury determines whether the sentence should be life imprisonment, life imprisonment without the possibility of parole, or death, regardless of the sentence actually imposed."  Id. at 783 (footnotes omitted).  The following factors are useful in identifying and comparing similar cases: 1) the means and manner of death; 2) the motivation for killing; 3) the place of death; 4) the similarity of the victims and treatment of the victims; 5) the absence or presence of premeditation, provocation, and justification; and 6) the injury to and effects on non-decedent victims.  See Bland, 958 S.W.2d at 667.  In comparing defendants, we consider the following non-exclusive factors: 1) prior criminal history; 2) age, race, and gender; 3) mental, emotional, and physical condition; 4) role in the murder; 5) cooperation with authorities; 6) remorse; 7) knowledge of helplessness of victim; and 8) capacity for rehabilitation.  See id.

In this case, we begin by reviewing the nature of the offense.  The defendant approached at least two persons offering payment to kill his wife before he conspired with Thompson to murder Mrs. Stephenson, the mother of two young children.  Mrs. Stephenson, who was lured under false pretenses to the remote location where she was killed, was shot in the head with a rifle at close range. The defendant's role in the murder was significant.  He instigated the plan to murder his wife, offered Thompson remuneration for the killing, and was present at the scene when her premeditated murder took place.  There was no evidence of provocation or justification for Mrs. Stephenson's murder.

We also consider evidence regarding the defendant and his background.  The defendant, a white male, had no prior criminal history.  He initially denied involvement in his wife's murder. While the defendant was diagnosed with a depressive disorder and a personality disorder, the defense expert, Dr. Engum, opined that the defendant's psychological difficulties do not interfere with his ability to perform his assigned tasks in prison. There was no evidence of brain damage.  There was also no evidence presented to show that the defendant exhibited remorse for killing his wife.

In mitigation, several witnesses testified that the defendant was an asset to the prison and that he functions well there.  Witnesses mentioned the defendant's positive contributions to the prison community, particularly his work ministering to and assisting other prisoners.  However, considering the nature of the crime and the defendant, we conclude that the murder of the defendant's wife places him into the class of defendants for whom the death penalty is an appropriate punishment.

The defendant's primary argument is that the death penalty is disproportionate in this case because Thompson received a life sentence for his role in the murder, while the defendant received a sentence of death.  We have repeatedly rejected the argument that a sentence of death is disproportionate simply because a co-defendant who was involved in the same killing received a lesser sentence.  See State v. Robinson, 146 S.W.3d 469, 503-04 (Tenn. 2004); State v.

Middlebrooks, 995 S.W.2d 550, 565 (Tenn. 1999); State v. Cauthern, 967 S.W.2d 726, 741 (Tenn. 1998); State v. Henley, 774 S.W.2d 908, 918 (Tenn. 1989). Disparate sentences may exist if there is a rational basis for the decision of the jury to impose the death penalty on one perpetrator and not the other. See State v. Carter, 714 S.W.2d 241, 251 (Tenn. 1986). In the present case, the defendant's relationship to the victim and his role as leader in instigating and planning the murder distinguishes him from Thompson. Moreover, this Court has upheld death sentences in murder-for-hire cases where the actual killer received a sentence of life imprisonment. See State v. Austin, 87 S.W.3d 447 (Tenn. 2002); State v. Stevens, 78 S.W.3d 817 (Tenn. 2002); State v. Hutchison, 898 S.W.2d 161 (Tenn. 1994); State v. Groseclose, 615 S.W.2d 142 (Tenn. 1981).[14]

In undertaking a proportionality review, we recognize that "no two cases involve identical circumstances." Stevens, 78 S.W.3d at 842. Our objective, therefore, is not to "'search for proof that a defendant's death sentence is perfectly symmetrical, but to identify and to invalidate the aberrant death sentence.'" Id. (quoting Bland, 958 S.W.2d at 665). Based upon an exhaustive review of the record and Supreme Court Rule 12 reports from trial judges in trials for first degree murder, we conclude that the sentence in the present case is proportionate when compared to other similar murders in which the death penalty was imposed. The following cases in which the death penalty was imposed support the proportionality of the defendant's sentence: State v. Austin, 87 S.W.3d 447 (Tenn. 2002) (defendant hired man to kill undercover police officer; sole aggravating circumstance (i)(4)); State v. Stevens, 78 S.W.3d 817 (Tenn. 2002) (defendant paid teenager $5,000.00 to kill his wife and mother-in-law to avoid financial difficulties of divorce; aggravating circumstances (i)(2) (prior violent felony conviction) and (i)(4)); State v. Hutchison, 898 S.W.2d 161 (Tenn. 1994) (man hired others to drown victim to get insurance money; sole aggravating circumstance (i)(4));[15] and State v. Porterfield, 746 S.W.2d 441 (Tenn. 1988) (woman hired man to kill her husband; wife's aggravating circumstances (i)(4) and (5); hired killer [Porterfield] also received death sentence). After reviewing these cases, and many others not specifically cited, we conclude that the penalty imposed by the jury in this case is not disproportionate to the penalty imposed for similar crimes. The sentence thus satisfies the criteria of Tennessee Code Annotated section 39-13-206(c)(1)(A)-(D).

### III. CONCLUSION

In accordance with Tennessee Code Annotated section 39-13-206(c)(1) and the principles adopted in prior decisions, we have considered the entire record and relevant legal authority. We conclude that the sentence of death has not been imposed arbitrarily, that the evidence supports the jury's finding of the statutory aggravating circumstance, that the evidence supports the jury's finding that the aggravating circumstance outweighs the mitigating circumstances beyond a reasonable

---

[14] Although the defendant in Groseclose initially received the death penalty for hiring others to kill his wife, the defendant was granted federal habeas corpus relief and underwent a new sentencing hearing at which he received a life sentence.

[15] Hutchison's co-defendant, Millard Curnutt, who also was involved in the murder for hire scheme, received the death penalty but died in prison before this Court could review his sentence.

doubt, and that the sentence is not excessive or disproportionate. Furthermore, we have reviewed all of the issues raised by the defendant and conclude that they do not warrant relief.[16] With respect to issues not specifically addressed within this opinion, we affirm the decision of the Court of Criminal Appeals. Relevant portions of that opinion are published hereafter as an appendix. The defendant's sentence of death is affirmed and shall be carried out on the 11th day of October, 2006, unless otherwise ordered by this Court or proper authority.

It appearing that the defendant, Jonathan Wesley Stephenson, is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE

---

[16] The defendant also asserts that he is entitled to resentencing on both his convictions, not just his conviction for first degree murder, because nullification of the sentence of life without parole necessarily negated the agreement regarding the conspiracy sentence. Whatever merit this argument has was waived by his failure to file a petition to rehear in Stephenson v. Carlton challenging this Court's statement in footnote three of that opinion that invalidation of the sentence of life without parole did not affect the sixty-year sentence imposed for the conspiracy conviction. The defendant further asserts that because the trial court on remand in 1994 "forced him to change his plea and enter a Guilty Plea, . . . it negated and took the place of any prior finding of Guilt by a Cocke County Jury, therefore leaving him without a conviction of any kind." Because this argument was not raised in the Court of Criminal Appeals, it is waived.