IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2014

## STATE OF TENNESSEE v. RANDALL WAYNE CAGLE

**Appeal from the Circuit Court for Hickman County**
**No. 125120CR     Timothy L. Easter, Judge**

**No. M2013-02271-CCA-R3-CD - Filed December 5, 2014**

Defendant, Randall Wayne Cagle, appeals from the trial court's judgment revoking his probation. Defendant pled guilty in the Hickman County Circuit Court to four counts of sexual exploitation of a minor. The judgments are not in the appellate record, but according to other documents and testimony at the probation violation hearing, the trial court imposed an effective sentence of eight years to be served entirely on supervised probation. Approximately five months later, a violation of probation warrant was filed and served on Defendant. Following a hearing, the trial court concluded that Defendant had violated probation. The trial court deemed its ruling as a "partial revocation" and ordered Defendant to serve sixty days in the Hickman County Jail and to thereafter be placed back on supervised probation. Defendant has appealed the trial court's revocation order. The trial court erroneously allowed testimony of Defendant's failure to pass a polygraph test. Therefore, we reverse the judgment of the trial court and remand this matter for a new probation violation hearing in which the results of any polygraph test, any evidence of Defendant's refusal (or willingness) to submit to a polygraph examination, and any statements made by Defendant as to why he would not submit to a polygraph examination are not to be admitted into evidence or otherwise relied upon by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Dale Quillen, Nashville, Tennessee, for the appellant, Randall Wayne Cagle.

Herbert H. Slatery, III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Kim R. Helper, District Attorney General; and Kate Yeager, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

The record reflects that general probation Rule number 12 which Defendant was required to follow as a condition of probation stated as follows: "If convicted of a sex offense, I will abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Board of Probation and Parole." There were twelve "Specialized Probation Conditions for Sex Offenders." The probation violation warrant alleged that Defendant was in violation of special conditions numbers 3 and 5, which state as follows:

> 3. I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer. I will continue in such treatments instructed for the duration of supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.

> 5. I will submit to and pay for a polygraph assessment and evaluation as instructed by the Board, the Court, my treatment provider, or my Officer.

When announcing the decision to revoke probation, the trial court specifically found that Defendant had violated special condition number 3. No mention was made of any finding that special condition number 5 had been violated. We conclude that the trial court implicitly found that Defendant was not in violation of special condition number 5. Therefore, on remand, the allegation in this probation violation warrant that Defendant violated special condition number 5 shall not be considered because it has in effect been dismissed by the trial court.

At the probation violation hearing, Susan Siedentop testified that she was employed by the Department of Correction as a probation officer in the Sex Offender Unit. She was Defendant's probation officer. Ms. Siedentop testified that Defendant completed his psychosexual evaluation. A recommendation of the evaluation was that Defendant obtain sex offender treatment. Ms. Siedentop described the sex offender treatment plan as follows:

> The treatment [was] to be conducted in an outpatient setting, containment model, group counseling, supervision and polygraph assessments. He should not have any use of pornography. He was to submit to regular polygraph exams, to promote full disclosure of his sexual history,

responsibility for his behavior and monitor compliance with treatment and rules of supervision, and he was to comply with all rules of supervision regarding contact with children and he was to undergo random drug testing.

According to Ms. Siedentop, Mr. Jim Tracy of Associates for Sexual Assault Prevention, LLC, was assigned to perform sex offender treatment for Defendant. Mr. Tracy directed Defendant to submit to a polygraph examination regarding Defendant's sexual history. Ms. Siedentop's explanation for the reason Defendant was not in compliance with special condition number 3 was that,

> [Defendant] went to the [polygraph examination] appointment and during the polygraph examination did not want to answer all of the questions asked of him and ended up leaving the assessment. Because he didn't [sic] comply with the rules of the treatment contract, he was dismissed from sex offender treatment.

Ms. Siedentop testified that she then "violated [Defendant] on his probation." She also testified in response to further questioning by the State that she had "had lots of contact with [Defendant] on this issue," and Defendant had "very clearly told" Ms. Siedentop that he "does not want to take the polygraph examination." Ms. Siedentop further testified that Defendant told her he did not want to take the polygraph examination because "he had some victims that he does not want to disclose."

Jack Tracy testified that he is a licensed professional counselor and the owner of a counseling service known as Associates for Sexual Assault Prevention. The business specializes in the treatment of convicted sex offenders who are serving a sentence on probation or parole. Mr. Tracy did an assessment of Defendant beginning with a psychosexual evaluation. After the evaluation was completed Mr. Tracy concluded that Defendant "was in denial of the facts of the offense." This resulted in Defendant's being put into a pretreatment process, which is placement into a treatment group with three basic goals: (1) accept responsibility for his criminal sexual behavior "as described on the affidavits;" (2) complete a sexual history that must be verified by a polygraph exam; and (3) demonstrate compliance with the rules of probation.

Defendant completed a sexual history questionnaire. He also talked with Mr. Tracy and his staff and "totally denied" having had sexual contact with any underage victims. Defendant was ordered to take a polygraph examination. The polygraph examiner had a conversation with Defendant prior to the polygraph examination. According to Mr. Tracy, the four questions asked of Defendant by the polygraph examiner were:

(1) Besides the one girl you told me about, have you ever sexually acted out with any underaged female since your 18ᵗʰ birthday?

(2) Have you sexually acted out with a male?

(3) Have you ever sexually acted out with an animal?

(4) Have you ever engaged in a type of sexual act that you intentionally did not tell me about today?

Immediately after Mr. Tracy listed the questions the following transpired in Mr. Tracy's testimony:

[Assistant District Attorney]:    Okay. And do you know what the results of that polygraph were?

A.    [Defendant] answered no and the results were deception indicated.

[Assistant District Attorney]:    And what happens at that point?

[DEFENSE COUNSEL]:    I'm going to object to that, Your Honor.

THE COURT:    Is this part of your report?

THE WITNESS:    Yes.

THE COURT:    Overruled.

Mr. Tracy testified that the polygraph examiner gave Defendant an opportunity to clear up the deceptive information. Defendant said that when he was eighteen years old "there was a teenage girl" with whom he had "sexual encounters." However, when Defendant realized the same four questions were going to be asked again, Defendant decided to not take the polygraph examination again. Upon returning to see Mr. Tracy, Defendant again declined the offer to retake the polygraph examination. As a result, Mr. Tracy told Defendant that he could not be kept in a treatment group, and Defendant was discharged from sexual offender treatment.

Defendant testified that he did not want to take the polygraph examination because his attorney had advised him to not take the examination. However, under the threat by his

-4-

probation officer that he would be in violation of probation if he did not take the test, he scheduled an appointment, took the test, and was then told by the examiner that he had failed the test. Defendant acknowledged that he refused the examiner's offer to take the polygraph test a second time.

The trial court's ruling is as follows:

> Court now having considered all the testimony at this probation violation hearing finds that pursuant to the warrant that was issued by the Court on August the 1ˢᵗ of 2013, the Defendant has violated the terms and conditions of rule number 3 of the sex offender's probation conditions and violation of rule number 12 of regular probation. Rule number 3 of the specialized probation conditions for sex offenders is that he will attend, participate and pay for treatment or counseling with an approved treatment provider as deemed necessary by the board, the Court or my officer.

> He agreed to continue in such treatment as instructed for the duration of his supervision unless his treatment provider in consultation with his probation officer, instructs him in writing that he has satisfied or satisfactorily completed treatment.

> The unimpeached testimony in this hearing has established, certainly, by a preponderance of the evidence that he failed to keep that provision of his specialized probation conditions.

> Court, therefore, finds that he has violated terms and conditions of probation. I'll order that he serve 60 days in the Hickman County Jail. At the end of the 60 days he will be reinstated to the same terms and conditions of probation that were in place before he violated and that, certainly, will include all of the specialized probation conditions for sex offenders including voluntarily or not voluntarily, but including that he submit for a polygraph assessment as instructed by his counselor pursuant to paragraphs three and four of the specialized conditions for sex offenders, but, specifically, here today, the Court finds the preponderance of the evidence supports a finding of violation of probation in that the defendant failed to keep rule number 3 of the specialized conditions for sex offenders and rule number 12 of state probation.

Court, specifically, finds for the benefit of the record that [Defendant's] testimony is not credible. Let's take [Defendant] into custody.

**ANALYSIS**

In a very concise argument in his appellate brief, Defendant asserts that the trial court revoked Defendant's probation because he was not attending sexual offender treatment and because he "refused to answer all of the questions by the polygraph provider." Defendant correctly points out that Defendant did take a polygraph examination. He also correctly notes that Defendant was expelled from the sexual offender treatment program by Mr. Tracy. Defendant submits that he was expelled by Mr. Tracy because Defendant refused to take a second polygraph examination "to presumably provide different answers." The summary of his argument states, "[Defendant] did not voluntarily leave the [sexual offender treatment] program and he did not refuse to take the polygraph. [Defendant] merely refused to give Mr. Tracy the answers Mr. Tracy wanted."

The State asserts in its argument that the evidence in the record support's the trial court's decision that Defendant's refusal to take the polygraph examination a second time constituted a violation of the conditions of probation.

T.C.A. § 40-35-311 sets forth the procedure to be followed prior to a trial court's revocation of a defendant's probation. At the hearing, the Defendant must be present, is entitled to be represented by an attorney, and is allowed to submit testimony in his or her behalf. T.C.A. § 40-35-311(b). Other than submission of evidence regarding a defendant's drug test, *Id*. at (c)(1), there is no provision in T.C.A. § 40-35-311 for any exceptions to the Tennessee Rules of Evidence being applicable in probation revocation hearings. *See* Tenn. R. Evid. 101 ("These rules shall govern evidence rulings in all trial courts of Tennessee except as otherwise provide by statute or rules of the Supreme Court of Tennessee.")

Perhaps nothing in the law is more clear to both persons in the legal profession and to those not in the legal profession than the well settled principle that polygraph evidence is inadmissible. In *State v. Sexton*, 368 S.W.3d 371 (Tenn. 2012), our supreme court stated,

> Simply stated, polygraph evidence is inadmissible. *State v. Damron*, 151 S.W.3d 510, 515-16 (Tenn. 2004). This Court has repeatedly held that the results of a polygraph examination are inherently unreliable. *State v. Torres*, 82 S.W.3d 236, 252 n. 20 (Tenn. 2002); *State v. Hartman*, 42 S.W.3d 44, 61-62 (Tenn. 2001). The "lack of any indicia of reliability means it is not probative." *Hartman*, 42 S.W.3d at 60. Furthermore,

"testimony regarding a [d]efendant's willingness or refusal to submit to a polygraph examination is not admissible." *State v. Stephenson*, 195 S.W.3d 574, 599 (Tenn. 2006) (appendix) (quoting *State v. Pierce*, 138 S.W.3d 820, 826 (Tenn. 2004)). One rationale for excluding the evidence is that it lacks relevance. *See* Tenn. R. Evid. 402; *United States v. Scheffer*, 523 U.S. 303, 309 n. 5, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (holding that polygraph evidence is unreliable).

*Sexton*, 368 S.W.3d at 409.

In *Sexton*, the defendant was convicted of two counts of first degree murder following a jury trial. Evidence of the defendant's refusal to submit to a polygraph examination was admitted over the defendant's objection at the second time the matter was brought up during testimony. The opinion of the supreme court states the following:

In our view, any reference to a possible polygraph examination or the refusal to submit to such an examination had no place in this trial. The State should not have asked the question. The defense should have lodged a more timely objection. Curative instructions should have been provided. *See Stephenson*, 195 S.W.3d at 598-99 (appendix); *State v. Atkins*, 681 S.W.2d 571, 578 (Tenn. Crim. App. 1984). Moreover, the Defendant did not "open the door." That principle applies only when the complaining party elicits "testimony he [later] assigns as error." *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004). While a litigant is not "permitted to take advantage of errors which he himself committed, or invited, or induced the trial [c]ourt to commit," *Norris v. Richards*, 193 Tenn. 450, 246 S.W.2d 81, 85 (1952) (quoting *Gentry v. Betty Lou Bakeries*, 171 Tenn. 20, 100 S.W.2d 230, 231 (1937)), that is not the case here. Allowing the references to the polygraph test was error. To its credit, the trial court acknowledged the error during the hearing on the motion for new trial, but ruled that the admission of the evidence did not affect the results of the trial.

*Id*. at 409-10.

From the testimony of Mr. Tracy quoted above, it is not clear whether Defendant's counsel objected one question late to the reference to a polygraph examination of Defendant or whether the objection was to the follow up question from the assistant district attorney. Furthermore, after the polygraph examination proof was admitted during the State's proof, Defendant testified about taking the polygraph examination and why he did not want to initially submit to it and why he declined to take it a second time.

-7-

In one notable Tennessee Supreme Court case, the defendant appealed a death penalty imposed upon him for a conviction of first degree murder. The conviction had previously been affirmed, but the death sentence had been vacated and remanded for a new sentencing hearing following a post-conviction hearing. *See State v. Hartman*, 42 S.W.3d 44, 46 (Tenn. 2001). On appeal, the defendant argued that the trial court erred by denying his request to admit into evidence the results of two polygraph tests which showed his innocence in order to establish "residual doubt" in an effort to avoid imposition of the death penalty. *Id*. at 60.

The State argued on appeal in *Hartman* that "evidence that [the defendant] allegedly passed polygraph tests is not admissible because its lack of any indicia of reliability means it is not probative." *Id*. In its ruling on this issue in *Hartman* the Tennessee Supreme Court stated:

> The defendant is correct that the rules of evidence should not be strictly applied in capital sentencing hearings to preclude the admission of relevant evidence. However, as the Court of Criminal Appeals recognized, there is longstanding precedent in this State holding that polygraph test results are inherently unreliable, and consequently, such results are irrelevant and inadmissible. *See Grant v. State*, 213 Tenn. 440, 443, 374 S.W.2d 391 (1964); *Irick v. State*, 973 S.W.2d 643, 652–53 (Tenn. Crim. App. 1998); *State v. Campbell*, 904 S.W.2d 608, 614 (Tenn. Crim. App. 1995); *State v. Adkins*, 710 S.W.2d 525, 529 (Tenn. Crim. App. 1985). We agree with this precedent. Moreover, contrary to the defendant's assertion, no different rule is required when a defendant seeks to admit polygraph test results to establish residual doubt. Since such results are inherently unreliable and not admissible to establish the defendant's guilt, it follows that such results are not admissible to establish residual doubt about the defendant's guilt.

*Id*.

Normally, if a defendant fails to properly and specifically object to testimony and/or does not raise the issue on appeal, the issue is waived. *See* Tenn. R. App. P. 36(a); Tenn. Ct. Crim. App. R. 10(b). However, Tenn. R. App. P. 36(b) authorizes an appellate court to grant relief when necessary to do substantial justice, if an error has affected the substantial rights of a defendant, even though the error was not assigned as error on appeal.

All of the following five criteria must be met in order for a defendant to be granted plain error relief:

(1) The record has to clearly establish what occurred in the trial court;

(2) A clear and unequivocal rule of law was breached by the error;

(3) A substantial right of the defendant was adversely affected by the error;

(4) The error was not waived for tactical purposes; and

(5) The error was so significant so as to probably change the outcome of the hearing, resulting in substantial justice being at stake.

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).

Our review of the transcript shows that all five criteria were met. Testimony regarding Defendant taking a polygraph examination and the results of the examination was admitted into evidence. This violated a "clear and unequivocal rule of law." Defendant's right to stay on probation with a totally suspended sentence absent submission of appropriate evidence at a court hearing was adversely affected. A careful review of the record shows a total void of any evidence to even suggest the error was waived for tactical purposes. Without a doubt, if the polygraph examination evidence had not been admitted at Defendant's hearing, the outcome of the probation violation hearing would have been different. The State's theory relied totally on Defendant's polygraph test results and his refusal to take a second polygraph examination to justify revocation of probation.

## CONCLUSION

It was plain error to admit any of the polygraph examination testimony. The judgment of the trial court is reversed. The case is remanded for a new probation violation hearing wherein the following evidence is not admissible: any proof about a polygraph examination including, but not limited to the taking of a polygraph examination by Defendant, the results of a polygraph examination taken by Defendant, proof of Defendant's refusal or willingness to take a polygraph examination, and the consequences to Defendant's probation status by refusing or declining to take a polygraph examination.

_____
THOMAS T. WOODALL, PRESIDING JUDGE