# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. GERALD EUGENE WHITE

**Direct Appeal from the Criminal Court for Putnam County**
**No. 100121     Leon C. Burns, Judge**

---

### No. M2011-01357-CCA-R3-CD - Filed September 27, 2012

---

A Putnam County jury convicted the Defendant, Gerald Eugene White, of possession of more than .5 grams of cocaine with intent to sell or deliver and simple possession of oxycodone. The trial court sentenced the Defendant as a career offender to an effective sentence of thirty years in the Tennessee Department of Correction. The Defendant appeals, arguing that: (1) the evidence is insufficient to support his convictions; (2) the trial court erred when it allowed testimony in violation of Tennessee Rule of Evidence 404(b); (3) the State made an improper closing argument; and (4) the trial court improperly sentenced the Defendant as a career offender. After a thorough review of the record and relevant law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Wesley Bray (at trial) and David Brady and Jennifer Kollstedt (on appeal), Cookeville, Tennessee, for the appellant, Gerald Eugene White.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Randy York, District Attorney General; and Douglas E. Crawford, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's participation in the illegal sale of drugs to a confidential informant who was working with police. The Defendant sold the drugs in a

neighboring county, White County, and shortly thereafter was arrested in Putnam County for the possession of drugs with the intent to sell or deliver. A Putnam County grand jury indicted the Defendant for two counts of possession of more than .5 grams of cocaine with intent to sell or deliver and two counts of possession of oxycodone with intent to sell or deliver.

## A. Hearing

Before the Defendant's trial in this matter, the State filed a motion in limine requesting to enter evidence, pursuant to Tennessee Rule of Evidence 404(b), of the Defendant's drug sale in White County shortly before his Putnam County arrest for felony possession of drugs. The trial court held a hearing on the State's motion, during which the following evidence was presented: Craig Capps, a White County Sheriff's Department detective, testified that he was a narcotics investigator and his work focused solely on narcotic sales and deliveries. Detective Capps recalled that he participated in an investigation of the Defendant that resulted in a controlled buy on October 1, 2009.

Detective Capps explained that he arranged for a confidential informant to meet the Defendant at the "Airport Chevron" to buy crack cocaine. The Defendant met the confidential informant on the side of the building where a security camera was located. Detective Capps said that he observed the transaction by watching the security camera footage from the manager's office inside the gas station. Detective Capps recounted the events he viewed from the manager's office. The confidential informant got out of his car and walked to the passenger-side window of the Defendant's white Dodge Durango. The confidential informant made the exchange of money for drugs, and then the Defendant drove away. Detective Capps notified Cookeville police that the Defendant was "getting on 111 and going northbound." Cookeville police initiated a traffic stop of the white Dodge Durango immediately after it crossed the Putnam County line.

Detective Capps testified that the confidential informant was under observation at all times. After the controlled buy, the confidential informant had off-white rocks that the Tennessee Bureau of Investigation ("TBI") crime lab later confirmed to be 1.8 grams of crack cocaine. Detective Capps said he provided the confidential informant with $260.00 to make the purchase. He explained that the serial numbers from the money were written down before the controlled buy in order to later confirm the sale. Detective Capps went to the scene where officers apprehended the Defendant, and then proceeded to the Putnam County Sheriff's office, where he confirmed that the serial numbers on the money seized from the Defendant matched the serial numbers on the bills the officer gave to the confidential information for the controlled buy.

On cross-examination, Detective Capps testified that the video footage he watched inside the Chevron station was in color and of "average" quality. Detective Capps said that the confidential informant parked his white pickup truck next to the Defendant's white Dodge Durango with the front of both cars facing the wall of the gas station. The confidential informant got out of the driver's side door of the truck and walked to the Defendant's passenger-side window, where he stood in between the two vehicles to purchase the drugs. Detective Capps said that, from his position, he could not see inside the Dodge Durango. He confirmed that he had previously worked with the confidential informant but had not worked with him since the controlled buy because the informant had received additional drug charges.

At the conclusion of this hearing, the trial court found that there was clear and convincing evidence that the Defendant engaged in a drug transaction and the transaction was admissible to show intent. The trial court further stated that, although the evidence had "some prejudicial impact," it provided "great" probative value on whether there was possession with the intent to sell. Based upon these findings, the trial court granted the State's motion requesting the introduction of this evidence.

**B. Trial**

At a trial on these charges, the parties presented the following evidence: Detective Capps testified consistently with his testimony from the 404(b) hearing. In addition, he testified that, before the controlled buy, police searched the confidential informant and his car, equipped the confidential informant with an audio recording device, and provided him with buy money. While Detective Capps watched the video camera footage inside the gas station manager's office, Detective Bumbalough was outside monitoring the recording device worn by the confidential informant. After the transaction was complete, the Defendant drove away, and Detective Capps followed the confidential informant to a church parking lot nearby and searched the confidential informant and his vehicle again.

Detective Capps testified that, at the time of the Defendant's arrest, a large sum of money was in his possession. The $260.00 used by the confidential informant to buy the crack cocaine was among the other bills found on the Defendant.

On cross-examination, Detective Capps agreed that he could not actually see the Defendant inside the Dodge Durango. Further, he did not actually see the exchange of drugs for money between the Defendant and the confidential informant. Detective Capps explained that he did not arrest the Defendant immediately after the drug transaction at the gas station because police were trying to protect the confidential informant's identity. Detective Capps agreed that the confidential informant was a convicted felon and that the confidential

3

informant was, at the time of trial, in federal custody for selling cocaine.

Brandon Tayes, a Cookeville Police Department officer, testified that his unit leader instructed him that White County law enforcement was preparing to do a controlled purchase of crack cocaine from the Defendant and that he needed to wait at the county line to stop the Defendant after the purchase. Officer Tayes initiated the traffic stop of a white Dodge Durango. Inside the Dodge Durango, the Defendant was seated in the front passenger seat, his wife, Erika Allen, was the driver of the vehicle, and three children were in the back seat. The Defendant was not immediately arrested in an attempt to protect the confidential informant's identity. Instead, the officer asked Allen to step out of the vehicle and obtained her consent to search the vehicle. Officer Tayes conducted a safety frisk of the Defendant and observed what he believed to be narcotics in the Defendant's front pocket. Officer Tayes asked the Defendant about the item "balled up" in his front pocket and the Defendant responded it was, "Nothing." Officer Tayes took the object from the Defendant's pocket. He testified that the item appeared to be about 3.5 grams of crack cocaine.

Officer Tayes testified that oxycodone pills were found both in the front seat of the car and on the Defendant's person. The oxycodone pills were packaged in clear wrapping giving the appearance that the pills were for sale. Officer Tayes identified the TBI Forensic Chemistry Report, which confirmed that the item retrieved from the Defendant's pocket was cocaine base and weighed 3.8 grams. It further confirmed that eleven of the pills found were oxycodone. The trial court admitted the report into evidence by stipulation of the parties. Officer Tayes said that $668.00 in various denominations was also found on the Defendant. Officer Tayes described $260.00 of the money as being "wadded up" and "separate" from the "other money." Officer Tayes said that he received a list of the buy money serial numbers from Detective Capps, and he confirmed the serial numbers from the list with the money recovered from the Defendant. Officer Tayes testified that he did not recover any paraphernalia associated with smoking crack cocaine from the Defendant's person or the vehicle.

Officer Tayes identified a video recording of the traffic stop involving the Defendant, and the State played it for the jury.

Officer Tayes testified that, at some point, he told the Defendant that he had information that the Defendant had been selling drugs, to which the Defendant responded, "You got me." The Defendant admitted that the narcotics were his and told Officer Hayes that he had obtained the pills "from the streets." The Defendant told Officer Tayes that he was not a dealer but an addict.

Based upon this evidence, the jury convicted the Defendant of possession of more

4

than .5 grams of cocaine with intent to sell or deliver and simple possession of oxycodone.

**B. Sentencing Hearing**

At the sentencing hearing, the parties presented the following evidence: Katina Bohannon, a Board of Probation and Parole officer, testified that she prepared the sentencing report for this case. The sentencing report reflected convictions for marijuana possession, resisting arrest, driving with a suspended license, aggravated robbery, and kidnapping. After Bohannon briefly reviewed the Defendant's criminal history, the State asked to move into the record six certified copies of the felony convictions listed in the sentencing report. Defense counsel made a hearsay objection to the entry of the certified copies. The trial court overruled defense counsel's objection and admitted the certified copies of the Defendant's felony convictions into evidence.

Bohannon testified that the Defendant was incarcerated from September 16, 1997, until July 2, 2007, for two counts of aggravated robbery and one count of kidnapping. During his incarceration, the Defendant received fifty-eight "disciplinaries." The Defendant reported no history of alcohol use but "regular daily" use of marijuana and cocaine. The Defendant reported that he had two stepchildren, one biological child, who lived with he and his wife, and another biological child who lived in Memphis.

Carla Ellison, who was employed by Kids First, testified on the Defendant's behalf. Ellison explained that she came to know the Defendant through her work. The Department of Children's Services referred the Defendant's family to Kids First for family support services. Ellison said that, in preparing children to return to their homes after state custody, she evaluates the homes to make sure the children are returning to a stable environment where the parents are using appropriate parenting skills. Ellison visited the Defendant's home approximately ten times over a three-month period. Ellison said that her reports from the evaluation of the Defendant's home were "all positive." Ellison said that, during her evaluation, she found no reason to delay reunification, so the children returned home, where they were still living with their mother at the time of the hearing. Ellison said that the Defendant had "a very positive relationship and effect on the children."

The Defendant testified that he had never been given the opportunity to serve a probationary sentence. The Defendant said that, before his current incarceration, he worked at J & C Automotives. The Defendant testified that he lived with and cared for three children. The Defendant said that he was a drug addict and he completed a program at "Bradford." After his release from this treatment program, the Defendant attended after-care until he was arrested on these charges. The Defendant said that he had attended AA meetings while incarcerated.

The Defendant testified that it was during his third year of college that he was arrested for the aggravated burglaries and kidnapping. He explained that his financial aid had "r[u]n out" and he had no other resources, so he resorted to crime in order to return to school. The Defendant denied possession of a gun during the robberies and stated that his co-defendants held the gun while he served as a "look out."

On cross-examination, the Defendant testified that he only had one opportunity for parole during his previous incarceration, and it was denied because of the seriousness of his crimes. The Defendant denied knowledge of two other parole reviews that declined parole based on his prison disciplinary record.

After hearing the evidence, the trial court sentenced the Defendant as a career offender to thirty years for the Defendant's possession of more than .5 grams of cocaine with intent to sell or deliver conviction and to eleven months and twenty-nine days for the Defendant's simple possession of oxycodone. The trial court ordered these sentences to run concurrently, for a total effective sentence of thirty years. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant asserts that: (1) the evidence is insufficient to support his convictions; (2) the trial court erred in allowing testimony in violation of Tennessee Rule of Evidence 404(b); (3) the State made an improper argument during closing arguments; and (4) the trial court improperly sentenced the Defendant as a career offender.

### A. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to support his convictions for possession of more than .5 grams of cocaine with intent to sell or deliver and simple possession of oxycodone. The State responds that sufficient evidence was produced at trial for a reasonable trier of fact to find the Defendant guilty of both convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial

evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999)( (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

**1. Possession of more than .5 grams of Cocaine with Intent to Sell or Deliver**

The Defendant was convicted of possession of more than .5 grams of cocaine with intent to sell, and the State was required to prove beyond a reasonable doubt that the Defendant knowingly "possess[ed] a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4) (2006 & Supp. 2007). A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a Class B felony if the amount of the cocaine possessed is .5 grams or more. T.C.A. § 39-17-417(c)(1) (2006 & Supp. 2007). Thus, in order to convict the Defendant, the State was required to prove beyond a reasonable doubt: (1) a knowing mental state; (2) possession of cocaine; (3) an intent to sell or deliver that cocaine; and (4) that the weight of the cocaine was .5 grams or more. T.C.A. § 39-17-417(a),(c) (2006 & Supp. 2007).

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b) (2006). A conviction for possession of cocaine may be based upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Further, the trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them. T.C.A. § 39-17-419 (2006); *see also State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002), *perm. app. denied* (Tenn. Oct. 21, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995), *perm. app. denied* (Tenn. July 10, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession).

The evidence in this case, viewed in the light most favorable to the State, showed that the Defendant arranged to meet at the Airport Chevron to sell crack cocaine to a confidential informant. The confidential informant used $260.00 with recorded serial numbers to make the purchase. Police officers observed the confidential informant park next to a white Dodge Durango, make the exchange, and then the Dodge Durango drive away. The Defendant was stopped in a white Dodge Durango shortly thereafter and had in his possession 3.8 grams of crack cocaine and $668.00 in various denominations. Among the money collected, police officers found the $260.00 used by the confidential informant to buy the crack cocaine. The Defendant admitted ownership of the crack cocaine to police. Accordingly, the evidence is sufficient to prove beyond a reasonable doubt that the Defendant possessed .5 grams or more

of cocaine with the intent to sell.

The Defendant claims that the evidence is insufficient as to his intent to sell the cocaine. The Defendant contends that Detective Capps testimony about the drug sale in White County was insufficient because Detective Capps did not actually see the Defendant when he viewed the transaction via a closed circuit television inside the gas station. The jury, however, heard the circumstances under which Detective Capps viewed the transaction and defense counsel's thorough examination of Detective Capps on this subject. We note that it is the jury's prerogative to evaluate and weigh the evidence. By its verdict, the jury exercised its prerogative and chose to accredit the testimony of the State's witnesses. It is the jury who is charged with making credibility determinations, not this Court. *Smith*, 24 S.W.3d at 278. It is not the function of this Court to reweigh the credibility of witnesses on appeal. *Id*. at 278-79.

Furthermore, there was also evidence surrounding the Defendant's arrest that supported an inference that the drugs were possessed for the purpose of sale. *See Kyles*, 2002 WL 927604, at *2; *Huntington*, 1995 WL 134589, at *3-4. An additional 3.8 ounces of crack cocaine was found on the Defendant and a large amount of cash in varying denominations. While the jury heard the Defendant's statement that he was an addict, they also heard that the Defendant was in possession of the controlled buy money and that he did not have any paraphernalia for drug use.

The Defendant also contends that, because the State failed to provide an expert witness to testify about the contents of the TBI report, the evidence is insufficient. The TBI report was introduced through Officer Tayes by stipulation and without objection. By stipulating to the admission of the report, the Defendant waived any right to complain about the admissibility of the evidence. *See* Tenn. R. App. P. 36(a).

We conclude that there was sufficient evidence to support a jury finding that the Defendant was in possession of more than .5 grams of cocaine with the intent to sell. The Defendant is not entitled to relief as to this issue.

## 2. Possession of Oxycodone

Tennessee Code Annotated section 39-17-418(a) provides that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Oxycodone is a Schedule II controlled substance. T.C.A. § 39-17-408(b)(1)(O) (Supp. 2007).

9

The evidence, considered in the light most favorable to the State, shows that the Defendant was stopped shortly after he sold crack cocaine to a confidential informant. On his person and in the area in which he was seated in the vehicle, police officers found pills in a clear, plastic baggie that were later confirmed to be oxycodone. The Defendant never claimed, nor does he now, that he possessed the oxycodone as a prescribed medication. The Defendant admitted ownership of the oxycodone pills. Accordingly, there was sufficient evidence for a jury to find that the Defendant knowingly possessed the oxycodone without a valid prescription in violation of Tennessee Code Annotated section 39-17-418(a). The Defendant is not entitled to relief as to this issue.

### B. Admission of 404(b) Evidence

The Defendant argues that the trial court failed to follow the requirements of entering evidence under Rule 404(b) and failed to properly instruct the jury as to the evidence. The State responds that the trial court properly admitted evidence of the White County drug transaction and properly instructed the jury as to the evidence. We agree with the State.

The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id*. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. at 403.

Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person to show action in conformity with that character. *Id*. at 404(b). Such evidence may be admissible, however, for "other purposes." *Id*. Our Supreme Court has determined that such "other purposes" include demonstrating motive or intent. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). Such evidence is admissible for other purposes, provided that the trial court: (1) upon request, holds a hearing outside the jury's presence; (2) determines that a material issue exists other than conduct conforming with a character trait and, upon request, states the basis for its determination; (3) finds proof of the other crime, wrong, or act to be clear and convincing; and (4) determines that the probative value of the evidence is not outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b). The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of prior crimes, wrongs, or acts. *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of

Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *James*, 81 S.W.3d at 759. If the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

The trial court held a hearing on the Rule 404(b) evidence outside the presence of the jury. After hearing the evidence, the trial court identified intent as the material issue other than conduct conforming with a character trait. The relevant charge was for possession of more than .5 grams of cocaine with intent to sell or deliver, requiring the State to prove that the Defendant intended to sell or deliver the cocaine. Evidence that the Defendant was leaving a drug sale during which he sold crack cocaine to a police confidential informant is evidence that the Defendant possessed crack cocaine with the intent to sell or deliver.

The trial court also found that the proof of the White County drug transaction was clear and convincing. Detective Capps testified that he provided the confidential informant with buy money and searched his person and vehicle for drugs before sending him to make the controlled buy. Detective Capps observed the exchange while another officer monitored the exchange on audio equipment. Detective Capps identified the Defendant's vehicle and notified authorities down the road to stop the vehicle. The drugs bought by the confidential informant were tested and confirmed to be cocaine base. Therefore, the trial court did not abuse its discretion in finding the evidence to be clear and convincing.

The trial court acknowledged that the evidence was prejudicial but found that it provided "great" probative value on whether there was possession with the intent to sell. The State was required to prove that the Defendant possessed the crack cocaine with the intent to sell. *See* T.C.A. § 39-17-417(a)(4) (2006 & Supp. 2007). Detective Capps' testimony that he observed the Defendant arrive at the agreed upon location for the drug sale, interact with the confidential informant, and then leave after the exchange was proof of the Defendant's intent to commit the crime at issue. Because the State had the burden of proving the Defendant possessed the crack cocaine with the intent to sell, we conclude that the trial court did not err in finding the probative value of the evidence was not outweighed by the danger of unfair prejudice.

We conclude that the trial court properly exercised its discretion in admitting evidence of the White County drug transaction. Further, the trial court properly instructed the jury on the manner in which it should consider the White County drug sale, and this Court must presume that a jury followed the trial court's instructions. *State v. Odom*, 336 S.W.3d 541, 562 (Tenn. 2011). The Defendant is not entitled to relief.

## C. Improper Argument

The Defendant asserts that the State made an improper comment in closing argument that prejudiced the jury's verdict. The Defendant complains that the State improperly told the jury that it was their duty "to render a verdict that's consistent with what the State has proven." The State contends that the Defendant has waived this issue for failure to make a contemporaneous objection to the comment, but, even so, the comment was not improper. We agree with the State.

The Tennessee Supreme Court "has long recognized that closing arguments are a valuable privilege that should not be unduly restricted." *Terry v. State*, 46 S.W.3d 147, 156 (Tenn. 2001) (citing *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978)). "Consequently, attorneys are given greater leeway in arguing their positions before the jury, and the trial court has significant discretion in controlling these arguments, to be reversed only upon a showing of an abuse of that discretion." *Terry*, 46 S.W.3d at 156 (citing *Sutton*, 562 S.W.2d at 823); *see Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). This Court has explained that "[closing] arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *See State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003) (citing *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)).

When an appellate court determines an argument to be improper, "the established test for determining whether there is reversible error is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment." *Goltz*, 111 S.W.3d at 5 (citing *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)). In measuring the prejudicial impact of an improper argument, this Court should consider the following factors: "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." *Goltz*, 111 S.W.3d at 5-6 (citing *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984).

The State correctly notes that the Defendant risked waiver of this issue by failing to contemporaneously object to the statements. *See* Tenn. R. App. P. 36(a); *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997). Typically when a prosecutor's statement is not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 and 36(a); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). We choose to address this issue, however, because the State's comment during closing argument was not improper.

12

The State's comment that it was the jury's duty "to render a verdict that's consistent with what the State has proven" is an accurate statement of the law. If the State has not proven the elements of a crime, it is the jury's duty to render a verdict that the State has not proven beyond a reasonable doubt that the Defendant committed the crime. Likewise, if, as in this case, the State proved beyond a reasonable doubt that the Defendant possessed more than .5 grams of cocaine with the intent to sell and possessed oxycodone, the jury had a duty to render a verdict consistent with the proof.

Accordingly, we conclude that the State's comment was not improper. The Defendant is not entitled to relief as to this issue.

## D. Sentencing

The Defendant argues that the trial court erred when it sentenced him as a career offender in reliance on the certified copies of his prior felony convictions. He states that the admission of the certified copies violated his constitutional right to confrontation. The State responds that the convictions were properly admitted as reliable hearsay. We agree with the State.

Tennessee Code Annotated 40-35-108(a)(1) provides that a defendant who has "[a]ny combination of six (6) or more Class A, B or C prior felony convictions, and the Defendant's conviction offense is a Class A, B or C felony" is a "career offender" for sentencing purposes. In this case, the Defendant's prior convictions consisted of five Class B felonies and one Class C felony. The Defendant's conviction for possession of .5 grams or more of cocaine with intent is a Class B felony.

The Defendant does not claim that the convictions are incorrect and, in fact, he admitted to the convictions during his sentencing hearing testimony. Instead, he claims the certified copies of the convictions are inadmissible as hearsay and violate his right to confrontation. Our Supreme Court addressed this issue in *State v. Stephenson*, 195 S.W.3d 574 (Tenn. 2006), concluding that the Confrontation Clause did not bar the admission of hearsay evidence during sentencing. *Id.* at 591. Furthermore, Tennessee Code Annotated section 40-35-209(b), which addresses sentencing hearings, states, "The rules of evidence shall apply, except that reliable hearsay including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted."

Based upon the foregoing, we conclude that the trial court properly considered the certified copies of the convictions in finding that the Defendant is a career offender for sentencing purposes. Therefore, the Defendant is not entitled relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE